[Civil No. 2064.    Filed March 31, 1923.]

[213 Pac. 1005.]

SOUTHWEST COTTON COMPANY, a Corporation, Appellant, v. FRED CLEMENTS, an Infant, by JOHN H. FOSTER, Guardian ad Litem, Appellee.

For opinion on Motion for Rehearing, see *infra,* p. 169, 215 Pac. 156.

1. EVIDENCE — PECULIAR KNOWLEDGE OR POSSESSION OF EVIDENCE CARRIES DUTY OF PRESENTING IT.—Peculiar knowledge or possession of evidence carries with it the duty of giving it out to avoid the natural imputation from its concealment.

2. EVIDENCE—COMMON KNOWLEDGE THAT ONLY PRACTICAL WAY TO EXPLODE DYNAMITE IS WITH DETONATING OR FULMINATING CAPS. It is common knowledge that the only practical way to explode dynamite is with detonating or fulminating caps.

3. EVIDENCE—PRESUMPTION THAT DYNAMITE CAP FOUND ON CORPORATION'S PREMISES WAS LEFT THERE BY EMPLOYEES DYNAMITING HELD NOT UNAUTHORIZED AS INFERENCE FROM INFERENCE. — The presumption or inference that a dynamite cap found on premises in the possession and control of a corporation, the employees of which had been blasting with dynamite thereon, was left there by them, *held* not unauthorized as being an inference from an inference.

4. NEGLIGENCE — QUESTION FOR JURY.—If the facts proved establish the more reasonable probability of actionable negligence, the case cannot be withdrawn from the jury.

5. EXPLOSIVES — WHETHER COMPANY DYNAMITING ON ITS PREMISES NEGLIGENTLY LEFT DYNAMITE CAP THEREON HELD FOR JURY.— Whether a corporation dynamiting on its premises carelessly left exposed thereon a dynamite cap which was found by a boy and subsequently exploded in his hand *held* for the jury, though the fact that it had dynamite caps was not clearly proved.

6. EXPLOSIVES—ONE BRINGING ON PREMISES DANGEROUS THING TENDING TO ATTRACT CHILDREN MUST TAKE REASONABLE PRECAUTIONS TO PROTECT THEM FROM INJURY.—Generally the owner or occupier of premises is not bound to keep them safe or in any particular condition for the benefit of children who are mere trespassers or licensees; but one who artificially brings or creates on

See 4 C. J., p. 766; 17 C. J., p. 1042; 22 C. J., pp. 84, 111; 23 C. J., p. 143; 25 C. J., pp. 185, 186, 209; 29 Cyc. 627; 38 Cyc. 1693.

his premises any dangerous thing, such as dynamite caps, which from its nature tends to attract children, is bound to take such reasonable precautions as the circumstances admit of to protect them from injury while playing with it or coming in its vicinity.

7. EXPLOSIVES—DYNAMITE CAPS MUST BE CARED FOR WITH UTMOST CAUTION.— Ordinary care requires that such dangerous instrumentalities as dynamite caps be cared for with the utmost caution.

8. EXPLOSIVES—CORPORATION LEAVING DYNAMITE CAP ON PREMISES LIABLE FOR INJURIES TO BOY FINDING IT, WHETHER TRESPASSER, LICENSEE OR INVITEE.—A corporation, whose employees left a dynamite cartridge lying on the ground on its premises on which a twelve-year old boy had been going with its permission, was liable for injuries to him when the cartridge, which he picked up, afterward exploded in his hand, even if he was a trespasser, instead of a licensee or invitee; the presumption being that it knew that a young boy discovering so attractive an article would not pass it by.

9. APPEAL AND ERROR—LOWER COURT ASSUMED NOT TO HAVE GIVEN ERRONEOUS INSTRUCTION.—Where it is not clear whether an erroneous instruction complained of was given, it will be assumed that the lower court did not commit error.

10. TRIAL—COURT INSTRUCTING ON NEGLIGENCE GENERALLY NEED NOT GIVE INSTRUCTION ON PROXIMATE CAUSE WITHOUT REQUEST.—In a personal injury suit, where the court instructed on negligence generally, it did not err in not giving an instruction on proximate cause, in the absence of a request therefor by defendant; Civil Code of 1913, paragraphs 514–516, imposing no duty on the court to instruct the jury on its own motion on all questions directly or collaterally involved.

11. DAMAGES—HOSPITAL AND DOCTOR'S BILLS HELD IMPROPERLY INCLUDED IN A VERDICT AGAINST DEFENDANT.—In a minor's action for personal injuries, where there was no evidence as to whether hospital, nursing and doctor's bills were rendered against defendant, plaintiff, or his parents, it was error to permit the jury to include the amount thereof in their verdict against defendant.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Judgment modified and, as so modified, affirmed.

Mr. G. P. Nevitt and Mr. J. B. Ogg, for Appellant.

Mr. Joseph Hansen and Mr. R. N. French, for Appellee.

ROSS, J.—The plaintiff, Fred Clements, by John H. Foster, his guardian *ad litem,* brought this suit against the Southwest Cotton Company for damages for personal injuries. The act of negligence charged is that the defendant carelessly left exposed upon its premises a dynamite cap which plaintiff later found, and which, while being handled by him, exploded, blowing off the thumb and two fingers of his left hand and injuring the sight of his left eye. The accident happened on November 17, 1920, about one month before plaintiff's twelfth birthday. The defendant interposed to the complaint a general demurrer and the defense of contributory or sole negligence and assumed risk. The answer also contained a general denial. The demurrer was overruled. The trial resulted in a verdict and judgment for plaintiff. Defendant has appealed from the order overruling his motion for new trial and from the judgment.

Defendant asserts that plaintiff neither stated nor made out a cause of action. It also complains of instructions that were given and instructions that were refused. It is indispensable, therefore, that we should get a clear understanding of the facts.

It is shown by the pleadings and evidence that defendant was in November, 1920, in possession and control of a cotton-gin at Marinette, Maricopa county, Arizona, and the grounds and premises adjacent thereto and surrounding it, covering some four or five acres; that running through or alongside these grounds were a railroad track and a public highway, and extending from the railroad to the gin was a spur-track; that defendant owned and had collected on said spur a lot of castings, old worn-out machinery and equipment, and on the 11th or 12th of November, by the use of high explosives described as dynamite, was engaged in breaking up such collection into scrap

iron. The defendant after breaking such material loaded it on box-cars and shipped it to San Francisco.

On November 17th plaintiff found, lying near the spur-track and near where the blasting had taken place, a small cap, and placed the same in his pocket. This was about 8 o'clock in the morning. He thought no more of it until the noon recess at school, when he took it out of his pocket, and, thinking it was intended to be used as a pencil guard, attempted to force it on the end of a pencil. It exploded and injured him, as stated above.

The defendant had but recently constructed the cotton-gin, and after it was finished there was considerable scrap lumber left, most of which was gathered and piled in one place near the gin. We cannot tell from the evidence just how far this pile of scrap lumber was from the metal junk pile, but probably some fifty to seventy-five yards. The employees of defendant company, one of whom was plaintiff's stepfather, had been given permission to go upon the premises and take the scrap lumber home for fuel. The plaintiff also had been given the same permission. It was with such permission, and with the personal knowledge of defendant's manager, that the plaintiff went upon the premises to gather fuel. On the 17th of November all of the scrap lumber that had been piled had been carried away, and the plaintiff, as he had done before, was picking up scrap lumber around and near the cotton-gin. On this morning he had made some two or three trips collecting the wood scattered upon the premises of defendant. It was while he was so engaged that he found the dynamite cap.

No witness testified to seeing dynamite or dynamite caps in defendant's possession at or near the scrap iron pile at the time of the blasting, or before or after. No one who assisted in breaking up the scrap

iron was called as a witness to tell what means were employed to do it with, or what made the noise described by all the witnesses as "blasting."

That some kind of high explosive was used by defendant's employees in breaking up the scrap iron cannot be seriously questioned. Several witnesses, living within a few hundred feet of the place where the blasting was taking place or passing near by at the time, saw the dust rise and heard the explosions. One witness, A. L. Essary, testified:

"I was working as a blacksmith for the Southwest Cotton Company. I know about the pile of junk. It came from around the blacksmith-shop where I worked. It consisted of old plows and gasoline engines, cars, pieces of cars and junk of all sorts. The junk was moved from the blacksmith-shop down on the switch below the gin. It was later blown to pieces by dynamite and shipped out."

This witness further testified that he did not see the dynamite, but that he heard the reports of the blasting.

Another witness, J. W. Shirley, testified:

"Somewhere along about November 10th or 12th I heard some blasting going on around that junk pile. Me and my brother-in-law was going along there about ten o'clock in the morning, and we heard some blasting. We went by there two or three times during the day and noticed the men working there. I judge that a couple of times they were blasting as we passed. Q. How do you know they were blasting? A. Well, we seen the dust flying and everything. I have handled powder myself, and I know about what the sound of dynamite is when I hear it."

F. R. MacPherson, who was the superintendent of the defendant's operations at Marinette and Litchfield at the time, was called as a witness, and stated that he had never seen dynamite at or about the cotton-gin. He did not pretend to say that he was present while the blasting was going on, or that

defendant's employees did not have dynamite and dynamite caps. He did say that about that time Maricopa county was building a bridge across the Ague Fria River, and that in that work they used dynamite; that such bridge was located about three-quarters of a mile northwest of the Marinette school-house. Just how close that was to the point where plaintiff found the cap we cannot tell from the record, but it was not in the immediate neighborhood.

Living in and around Marinette at the time were some 700 or 800 human beings engaged in farming, cotton-growing and cotton-picking. There was a good deal of travel on the public highway through Marinette by men with pack burros and wood haulers, and they would frequently camp near the schoolhouse. No campers, however, were allowed on the cotton-gin premises after the gin was constructed there. While there had been a fence around the grounds occupied by the cotton-gin, it had fallen down so that parties could pass in and out without any trouble.

It is the contention of the defendant that the facts disclosed by the above evidence do not make out a case against it; that it is not shown therein that defendant had or left any dynamite cap at the place where plaintiff found the one that injured him. We judge from the defendant's contention that this is based largely upon the absence of direct testimony showing the alleged negligence, and from the further contention that no inference of negligence can be drawn from the proven circumstances in this case.

The evidence introduced at the trial, and accepted by the jury, shows, or tends to show, the following facts: That on or about November 11, 1920, defendant on its premises broke up some old iron; that in doing so it blasted it with dynamite; that five or six days after this blasting, while the plaintiff, with the permission of defendant, was gathering scrap lumber

on the premises for fuel, he found near the place the scrap iron had been blasted a dynamite cap which he picked up and put into his pocket; that later, without knowing what it was, plaintiff undertook to force it on the end of his pencil, when it exploded, injuring him very severely; that no one else had been recently, or at all, doing any blasting or exploding any dynamite at or near where plaintiff found the cap.

There is no direct evidence that defendant's employees used dynamite caps to explode dynamite, that is, no witness said he saw dynamite caps in their possession; and, for that matter, no witness said he saw dynamite in their possession, but the testimony that they did explode dynamite is not contradicted.

Peculiar knowledge or possession of evidence carries with it the duty of giving it out if one would avoid the imputation that its concealment naturally reflects. Of course, the defendant knew whether its employees used explosives to break up the scrap iron, as testified to by different witnesses, and it is very improbable that it would have left the statement that it did use such explosives unchallenged, if the fact had been that it did not use them. It offered no evidence to refute the charge and did not cross-examine plaintiff's witnesses, who said the blasting was with dynamite, as to the extent or source of their knowledge. The defendant's attitude at the trial, toward that point, seemed to be:

"You haven't proved, and you can't prove, or you don't know enough to prove, we used dynamite and explosive caps to break up iron, and we don't have to admit or deny it, although we are in complete possession of the facts about the matter."

It appears to us that although plaintiff did not make the clearest proof of the essential fact that defendant did have dynamite caps in breaking up

scrap iron, it was clearly established that it did dynamiting; and when that is conceded or proved the coexistence of the two, dynamite and dynamite caps, is established, as also their use at that time and place.

We think it is common knowledge that the only practical way to explode dynamite is with detonating, or fulminating caps, and that the witness' statement that defendant dynamited scrap iron implied the use of dynamite caps, as much so as if directly stated.

It is argued by the defendant that to permit the presumption of negligence upon its part to be inferred from the foregoing facts would be drawing inference from inference, which is not permissible under the law. The proven circumstance that defendant did dynamiting also establishes the fact that it had dynamite caps at the place where plaintiff found the one that injured him, just a few days before he found it, and the fact that no one else had been using dynamite caps at that place, we think, under the decisions clearly justified the presumption or inference that the cap found by plaintiff was left there by the defendant.

In *Byrnes* v. *Hewston,* 13 Ohio App. Rep. 13, the plaintiff, a boy of ten years of age, found a dynamite cap in a field where defendant had been using dynamite for blasting purposes some six months before. It was shown that "no other work of a similar character had been done in the neighborhood." The court said:

"The jury had a right to infer that these caps were the property of Byrnes, and had been carelessly left by him or his servants in the open field."

In *Eckart* v. *Kiel,* 123 Minn. 114, 143 N. W. 122; *Mathis* v. *Granger Brick & Tile Co.,* 85 Wash. 643, 149 Pac. 3; *Barnett* v. *Cliffside Mills,* 167 N. C. 576, 83 S. E. 826, upon facts very similar to the ones in this case, an inference of negligence was allowed.

In the last case there is quoted from *Fitzgerald* v. *So. Ry. Co.*, 141 N. C. 534, 6 L. R. A. (N. S.) 337, 54 S. E. 393, the following rule of evidence that applies to the circumstances of this case:

"It is very generally held that direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances, and it is well established that if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence. Thus, in Shearman & Redfield on Negligence, section 58, it is said: 'The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover-unless the defendant produces evidence to rebut the presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's default, but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide whether it did so or not. To hold otherwise would be to deny the value of circumstantial evidence.'"

Our conclusion is that the evidence was sufficient to go to the jury and that the court did not err in refusing to grant defendant's motion for an instructed verdict.

The defendant claims that it owed no legal duty to the plaintiff; that the law does not require the owner to avoid the leaving or placing upon its premises of dangerous instrumentalities, such as explosives, as against trespassers or licensees, even though they be children. This contention is not in accord with the great weight of authority. The rule, as stated by Thompson on Negligence, section 1004, is as follows:

"As a general rule, he (owner or occupier) is not bound to keep his premises safe, or in any particular

condition for the benefit of trespassing children of his neighbors, or for the benefit of children who occupy no more favorable position than that of bare licensees. A well-grounded exception to the foregoing principles is that one who artificially brings or creates upon his premises any dangerous thing, which from its nature has a tendency to attract the childish instincts of children to play with it, is bound, as a mere matter of social duty, to take such reasonable precautions as the circumstances admit of, to the end that they may be protected from injury while so playing with it, or coming in its vicinity."

A good statement of the rule is found in 11 R. C. L. 664, section 17:

"As a general rule a person leaving exposed and unguarded on his premises an explosive which is found by trespassing children is liable for any injuries resulting from its explosion. This rule is based on the very natural and reasonable assumption that children, wherever they go, must be expected to act upon childish instincts and impulses; and those who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If persons leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, such persons should expect that liberty to be taken."

Further on in the same section is used this language:

"A narrower and more rigid rule is that a land owner is not liable for injury to a trespassing child through the explosion of dynamite carelessly left in an exposed position on his property."

There is cited in this text cases from New Hampshire and Rhode Island; and defendant cites us to *Birnbaum* v. *Philadelphia & Ry. Co.*, 249 Pa. 238, 94 Atl. 925, and *Gralka* v. *Worth Brothers Co.*, 245 Pa. 467, 91 Atl. 860.

Holding to the contrary are the courts of many of the states.

The plaintiff was not a trespasser. For some time prior to finding this .cartridge he had been going upon defendant's premises, with the permission of the defendant, and collecting piled and scattered pieces of lumber to be used as fuel at his parents' home. The defendant knew this, and must also be presumed to know that a young boy, discovering so attractive an article as a dynamite cartridge lying upon the ground, would not pass it by. The most natural thing was that he should pick it up, and anyone familiar with the dangerous quality of these explosives and the ease with which they are exploded would expect just what happened in this case. What was done by defendant's employees falls far short of the degree of care that should be exercised by those handling dangerous explosives.

"Ordinary care requires that such dangerous instrumentalities [blasting caps] should be cared for with the utmost caution, with a degree of caution in fact quite inconsistent with the idea of their being found lying loose upon the ground." *Byrnes* v. *Hewston, supra.*

In *Mattson* v. *Minnesota Ry. Co.,* 95 Minn. 477, 111 Am. St. Rep. 483, 5 Ann. Cas. 498, 70 L. R. A. 503, 104 N. W. 443, it is said:

"The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article."

In *Wood* v. *McCabe,* 151 N. C. 459, 66 S. E. 434, the court said:

"All courts and writers agree that the degree of care required of persons using such dangerous instrumentalities as dynamite in their business is of the highest, and what might be reasonable care in respect to grown persons of experience would be negligence as applied to youths and children."

If the evidence presented to the jury satisfied them that defendant's employees left the dynamite cap where plaintiff found it, they were justified under the facts in this case in going further and finding defendant guilty of actionable negligence, notwithstanding it all happened upon the premises of defendant and while the plaintiff was only a licensee.

The defendant complains because the court refused to give an instruction requested defining the duty of a property owner to persons coming upon his premises. We think under the facts in this case it made little or no difference whether the plaintiff was a trespasser, a licensee or an invitee. It is quite clear that he was a licensee; but under the authorities he would have been entitled to a verdict even had he been a trespasser, providing he satisfied the jury the defendant left the dynamite cartridge where he found it. At all events, it may be questioned whether the rule is different, as applied to these different classes, when the injured party is a child and the instrumentality causing the injury is dynamite or other high explosive.

The defendant assigns the giving of the following instruction as error:

"The jury are instructed that the defense of contributory negligence is not available against a child or one not having attained the years of discretion."

We find in the record this instruction, together with a number of others asked by the plaintiff. In the order in which they were numbered this instruction was No. 2. On its margin is written the word "refused," and underneath such word the initials of

the trial judge. All of the other instructions asked by the plaintiff are marked "given" or "given as modified." In the reporter's transcript of the instructions, "No. 2" is set out. Then follows considerable discussion between counsel and the court over instructions 2, 4 and 5. It is not made clear therefrom whether this instruction (2) was given to the jury. During the discussion the court said:

"Now, gentlemen, I haven't read but one instruction to the jury so far. I have read the first instruction, that is all."

On the resumption of the reading of the instructions to the jury, the court began with instruction No. 3, thus indicating that he did not give No. 2, but refused it.

We think the record on the whole shows that the instruction was not given, but if we entertained any serious doubt in that regard it would be our duty to assume that the lower court did not commit error. This requested instruction does not correctly state the law as to the ability of an infant, and how to determine when he may be guilty of contributory negligence, and the trial judge seemed to be of that mind, since he marked it "refused," and his comments as taken by the court reporter would indicate that he did not give the instruction.

It is next urged that the court committed error in not giving an instruction upon its own motion on the question of proximate cause. The defendant asserts that this duty is imposed upon the court by paragraphs 514, 515 and 516 of the Civil Code of 1913, as construed in *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124. In the Ryan case no instruction on the measure of damages was requested by either of the parties litigant, and none was given by the court. We there held that such a vital question as the measure of damages for personal injury

should have been, even in the absence of request, explained to the jury by the court on its own motion, and that a total failure to declare the law on the measure of damages in such case was error. We did not hold, nor did we intend to hold by the language employed, that it was the duty of the court on its own motion to take notice of all questions directly or collaterally involved and to instruct the jury thereon. It was said in the Ryan case that where the court, either upon request or upon its own motion, undertook to instruct upon any question involved, if either party was dissatisfied with the instruction given he could request other and additional instructions presenting his viewpoint, and, failing to do so, he would not be permitted to complain. In the present case the court did instruct upon negligence generally. If the defendant desired particular instructions upon proximate cause, he should have requested it.

Defendant complains that the court erred in overruling its general demurrer to the complaint. The point it relies upon in that connection is that the complaint shows upon its face that plaintiff entered upon the premises of the defendant as a licensee or trespasser, and therefore on its face it shows that the plaintiff should not recover.

We have in another part of this opinion discussed the duty of the occupier or owner of premises to exercise great care and caution in the handling and disposition of explosives. And, following what we think is the weight of authority, come to the conclusion that such owner or occupier of lands is guilty of actionable negligence, if he places upon his premises, or leaves thereon, explosives that later fall into the hands of and injure children there either by invitation or license, or as trespassers in some cases. We think the complaint stated a cause of action.

The plaintiff claimed in his complaint $234.30 for moneys paid out, or debts incurred, for hospital, doctor's and nursing bills. The court instructed the jury that they might include that amount in their verdict.

The plaintiff was taken by one of the defendant's employees, immediately after first aid was administered at Marinette, to St. Joseph's Hospital in Phoenix, where he stayed and was cared for. The evidence is so meager as to who contracted and was expected to pay the hospital, nursing and doctor's bills, that it is not possible therefrom to determine whether the bills rendered were against the defendant, the plaintiff, or his parents. It is quite as reasonably deducible from the evidence that St. Joseph's Hospital and the attending physician were looking to the Southwest Cotton Company for their payment as that they were looking to the plaintiff or his parents. The evidence is that bills were rendered, but there is no showing as against whom.

The judgment should be modified by deducting therefrom the sum of $234.30, the amount the jury were told to include in their verdict for hospital, nursing and medical attention, and, as so modified, affirmed.

McALISTER, C. J., and LYMAN, J., concur.