### Betty E. Krulee v. F. C. Huyck & Sons

[156 A2d 74]

September Term, 1959

Present: **Holden, Shangraw, Barney and Smith, JJ. and Daley, Supr. J.**

Opinion Filed November 3, 1959.

*Wallace C. Schinoski, Parker & Ainsworth* and *Martin Blackman* (of New York, N. Y.) for the defendant.

*Mc Namara & Larrow* for the plaintiff.

**Barney, J.** The controversy between the parties arose out of negotiations in connection with a proposed sale to the plaintiff of the Gay Brothers mill property, so-called, located in Cavendish, Vermont. The price being substantial in amount and the property to be transferred being varied in character and considerable in quantity, a purchase agreement was entered into between the parties. This agreement set forth with some particularity the obligations of both the plaintiff as buyer and the defendant as seller if the transaction was to be consummated. It also provided that the plaintiff as buyer was required to deposit with the defendant as seller $33,500.00, ten per cent of the agreed price, to be forfeited to the seller if the buyer failed to perform. If the seller was unable to make conveyance at the closing date, he was required to remove the defects in title within thirty days or refund the deposit. At the time the closing was held each party claimed the other was in default, the buyer demanding a return of the deposit and the seller claiming the right to retain it.

During the trial witnesses on both sides testified that at various preliminary conferences between representatives of the parties the well water supply system several times came up for discussion, including the question of whether or not it constituted a public utility. At the close of the defendant's

case and again at the close of all the evidence the plaintiff moved for a directed verdict on the grounds that the well water supply system was a public utility, which as a matter of law prevented the giving of good marketable title by the defendant. These motions were denied with exceptions to the plaintiff in each instance.

After the jury had been deliberating for several hours, they requested further instructions. One of the jurors inquired of the court whether or not the plaintiff's representative at the closing conference was legally justified in refusing to state what the defects were in the documents tendered by the representatives of the defendant. The court replied, "The answer to your question is: No, Mr. Vaughn was not required to specify in what way the proposed documents were defective. He was not required to do so; no such obligation rested on him."

Before giving this supplemental charge the court had indicated its content to counsel. At that time both sides were given an opportunity to state their objections to it for the record. The plaintiff had no objections, but the defendant made the following statement:

> "We do object to that proposed supplemental charge, if the court please, because we say that the evidence does not warrant that. There is evidence in the case that tends to show—put it that way—that the tender of the deed at the time in question did in fact convey what the defendant had agreed by its contract to convey, and we say this supplemental charge as proposed excludes entirely any instruction to the jury upon the evidence bearing on that. I would say further that my recollection in the Drew case is that there is a situation where the record showed that there was this pole line right across the property to be conveyed, which made it impossible under those circumstances for the vendor to complete. But that, we say, is not the situation here."

After the charge was given, part of the original charge was repeated. All objections were then renewed, including the above-stated objection to the supplemental charge.

The jury by its verdict found that the deposit ought to be returned to the plaintiff, and the defendant is here seeking to have that verdict set aside on the basis of claimed error by the trial court in the supplemental charge.

■ In brief and argument the defendant argues that the charge was in error in stating that there was no obligation on the part of the plaintiff to disclose the reasons for considering defendant's deed defective and rejecting the tender. As the record shows, the exception taken to this charge was grounded only on the proposition that the tender made by the defendant was not defective. In short, the defendant is seeking to put the trial court in error on a ground not covered by its exception. This it cannot do. *Vermont Salvage Corp.* v. *Northern Oil Co., Inc.*, 118 Vt 337, 339, 109 A2d 267; *Robillard* v. *Tillotson*, 118 Vt 294, 302, 108 A2d 524.

■ This Court has already indicated, in *Abel's, Inc.* v. *Newton*, 116 Vt 272, 275, 74 A2d 481, that its preference is to base an opinion on the point or points sought to be raised by the excepting party rather than have it go off on a procedural point, as in this case. Nevertheless, procedural rules are devices to insure fairness, uniformity and regularity of treatment to all litigants appearing before the courts, and to be meaningful, they must be enforced.

■ We are satisfied that insistence on the procedural proprieties works no injustice in this case. Both here and in the trial court plaintiff argued that since the well water supply system was a public utility and could not be transferred without the consent of the Public Service Commission she was entitled to a directed verdict as a matter of law. Admittedly, her exceptions to the denial of those motions were not brought up to this Court. However, plaintiff in both brief and argument before us rightly contends that if her motions ought to have been granted below, error, if any, in the supplemental charge was harmless and could not work a reversal in the light of the verdict in her favor. *Russell* v. *Pilger*, 113 Vt 537, 544, 37 A2d 403; *Goupiel* v. *Grand Trunk Railway Co.*, 96 Vt 191, 193, 118 A 586, 30 ALR 690; *LaMountain's Admx.* v. *Rutland R. R.*, 93 Vt 21, 26, 106 A 517.

The undisputed evidence disclosed that there was connected with the mill a well water supply system. It consisted of a well, pump, five-thousand gallon storage tank and aqueduct system, part of which ran under the public streets. About half of the water output of the system was used by the mill operations and the other half was distributed through the system to non-mill users. An annual charge of $24.00 was collected from users, and water was furnished them whether the mill was in operation or not. The system served forty-nine customers besides the mill, including the school, library, town building, health center, union hall, bank, Baptist church, cemetery and various individual domestic users. There was no other public water system in the village of Cavendish. No certificate of public good had ever been sought or obtained from the Public Service Commission, nor had any rate schedule ever been filed with that body.

The purchase agreement contemplated transfer of this water system with the mill, and put the burden on the defendant as seller to furnish "good and clear record and marketable title" to it.

■ By virtue of the plaintiff's motions for a directed verdict the trial court had squarely presented to it the question of whether or not this water system connected with the mill was a public utility under our law. The Public Service Commission, by virtue of 30 V. S. A. §203(3), is given jurisdiction over any company "other than a municipality engaged in the collecting, sale and distribution of water for domestic, industrial, business or fire protection purposes." This jurisdiction does not require the consent of the company affected; it is imposed by the authority of the Vermont legislature. See *Hall* v. *Swanton*, 113 Vt 424, 35 A2d 381; *McFeeters* v. *Parker*, 113 Vt 139, 145, 30 A2d 300.

In the instant case the company operations with respect to the well water supply system constitute collection, sale and distribution of water for domestic, industrial and business purposes. The substantial identity of the nature of the water operation with the statutory description is immediately apparent from the facts. This water system is under the juris-

diction of the Public Service Commission whether or not the active regulatory authority of that body has ever been invoked.

■  The provisions of 30 V. S. A. §108 require that no sale, lease, consolidation or merger of corporations under the jurisdiction of the Public Service Commission be undertaken except after notice and hearing by the Commission, a finding by the Commission that the proposed action will promote the general good of the state, and a filing with the secretary of state of a certificate of consent.   The uncontroverted evidence discloses that none of these steps had been taken at any time prior to the commencement of this litigation.   Without the consent of the Public Service Commission the defendant could not convey a clear and marketable title as it was required to do. *First National Bank* v. *Laperle*, 117 Vt 144, 157, 86 A2d 635, 30 ALR2d 958.   Indeed, it was beyond its power to do so. A marketable title was defined by Cardozo, J. in *Trimboli* v. *Kinkel*, 226 NY 147, 123 NE 205, 5 ALR 1385, as one "that may be freely made the subject of resale." That situation clearly did not obtain here, and plaintiff's motion for a directed verdict ought to have been granted.

■  However, since the verdict returned by the jury is the same verdict that ought to have been directed in the plaintiff's favor, both as to liability and damages, we will let it stand, the defendant taking nothing by its exceptions. *Goupiel* v. *Grand Trunk Railway Co., supra*, 96 Vt 191, 193, 118 A 586, 30 ALR 690.

With this disposition of the case it is unnecessary to consider the issues sought to be raised by the defendant by its motion to set aside the verdict.

*Judgment affirmed.*