## Harold Winter and Georgia Winter, b/n/f Harold Winter v. John Unaitis and Marjorie T. Unaitis

[ 204 A.2d 115 ]

June Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed October 6, 1964

*Robert H. Gibson* and *John A. Rocray* for plaintiffs.

*Fitts and Olson* for defendants.

**Sylvester, J.** This is a civil action for the alleged negligence of the defendants in failing to maintain premises claimed to be under their control in a reasonably safe condition, as result of which the plaintiffs suffered injury. Trial was by jury, resulting in a verdict and judgment for the defendants. The case is here on plaintiffs' exceptions to the court's failure to charge as requested, on their exceptions to the charge and on the court's denial of defendants' motion for a directed verdict.

We will first direct our attention to defendants' exception to the court's denial of their motion for a directed verdict made at the close of all the evidence. If this motion should have been granted, any errors in the charge as given, or failure to charge as requested, to which the plaintiffs have excepted, were harmless. *Krulee* v. *Huyck & Sons,* 121 Vt. 299, 302, 156 A.2d 74; *Russell* v. *Pilger,* 113 Vt. 537, 544, 37 A.2d 403; *LaMountain's Admx.* v. *Rutland R.R.,* 93 Vt. 21, 26, 106 Atl. 517. Taking the evidence in the light most favorable to the plaintiffs, as it must be in determining whether error was committed in failing to grant defendants' motion for a directed verdict, the jury could have reasonably found the following facts.

The defendants own and operate a farm in the Town of Vernon, Vermont. During the fall of 1960, the defendant, John Unaitis, em-

ployed the plaintiff, Harold Winter, to work for him as a farm hand. As a part of Winter's wage, defendants gave him and his family the use of one of the tenements in a two-tenement house owned by them and located on their farm property. The remaining tenement in this same house was occupied by one Jesse Moffitt and his family. Moffitt was also employed by the defendants, and was a relative of the plaintiffs. Other tenants and hired help of the defendants had occupied the Winter tenement during the three year period prior to plaintiffs' occupancy thereof.

Attached to the rear of this two-tenement house was an entry-way and a large shed, used by the Winter and the Moffitt families as a passageway to their tenements, and also for storage of firewood used by them. This shed was also used as a storage place by the defendants, and served as a play area for plaintiff's children, the Moffitt children and those of the defendants. Within this common shed area was stored a stove, two used refrigerators, a nail keg containing nails, staples, bolts, mowing machine fingers, and about the area was a scythe and other small farm items, some belonging to the defendants.

Sometime during the spring of 1962, while the plaintiff's, Moffitts' and defendants' children were playing in this shed in question, Philip Unaitis, a 16-year old son of the defendants, found several small, cylindrical objects on a shelf inside the door of the shed. Upon discovering that these objects made good whistles, Philip distributed them to his playmates, one of which came into the possession of the plaintiff Georgia Winter, 11 years old. Georgia retained this object in her handbag for approximately a month, using it occasionally as a whistle.

On May 21, 1962, while attending school, and while sitting in her classroom, Georgia removed the small, cylindrical object from her pocketbook and undertook to pick it with a small safety pin. The outcome of this investigative curiosity on the part of Georgia resulted in a loud explosion, the loss of an eye, two fingers, a part of a third finger, and permanent scars about the head, face and arms. This cylindrical object was an explosive commonly known as a blasting cap.

Defendants' motion for a directed verdict was, in substance, that plaintiffs had failed to introduce any evidence of actionable negligence on part of the defendants in the care and maintenance of the premises in question; that the plaintiffs had failed to establish that any negligence of the defendants was the proximate cause of the plaintiffs'

injuries; that the plaintiffs had failed to prove that the defendants knew, or ought to have known, in the exercise of reasonable care, of the existence of the blasting caps in the area in question, and that the plaintiffs were guilty of contributory negligence as a matter of law. We will first take up that portion of the motion having to do with defendants' negligence.

In considering this ground of the motion, we must, as has been repeatedly held, take the evidence in the light most favorable to the plaintiffs. The tendency of the evidence and not its weight, is to be considered; the question is not merely whether there is any evidence to this effect, but whether it is of such a quality and character as to justify a jury, acting reasonably, to predicate a verdict thereon in favor of the party having the burden of proof. *Peterson* v. *Post,* 119 Vt. 445, 451, 128 A.2d 668. Evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise or suspicion, is an insufficient foundation for a verdict. *Lewis* v. *Vermont Gas Corp.,* 121 Vt. 168, 179, 151 A.2d 297; *Perkins* v. *Vermont Hydro-Electric Corp.,* 106 Vt. 367, 399, 177 A. 631. The form of expression used in some of our cases is that there must be substantial evidence fairly and reasonably tending to support the plaintiffs' claim to make a case for the jury. *Lewis* v. *Vermont Gas Corp., supra,* and cases there cited.

The plaintiffs recognize and set forth in their brief that to recover they must sustain their proof on three elements, as they refer to them, *i.e.,* 1) That the defendants had retained control of the shed in question so as to impose upon the defendants the duty of maintaining this shed in a reasonably safe condition; 2) That the defendants in the exercise of their control of this shed were negligent in the manner in which they exercised this control; 3) That such negligence on the part of the defendants constituted a proximate cause of the injuries suffered by the plaintiff Georgia. Plaintiffs' brief is devoted mostly to argument and citations having to do with element number 1, concerning control of the shed in question, to the charge of the court as given and to the court's refusal to charge their many requests. Little is said of the claimed negligence on part of the defendants.

We conclude, however, from plaintiffs' oral argument and from their brief that the negligence upon which they seek to charge the defendants was the storage in the shed in question, of a stove, two refrigerators, a nail keg containing nails, staples, bolts and similar

items, including a scythe, the failure to remove these items upon request to do so by Mrs. Winter, and failure to exercise the necessary care and diligence to have discovered the cylindrical objects, if found to be on the premises, and to have removed them therefrom.

We have made a careful examination of the record and find no evidence, and none has been pointed out to us, indicating when the explosive caps first appeared in the shed, who may have placed them there, how long they had remained in the shed when found by the boy Philip, or any evidence that the caps were ever in the possession of the defendants or that the defendants knew anything of an explosive nature was about the shed. True, Mrs. Winter requested the defendant John Unaitis to move the stove and refrigerators, and especially the refrigerators, because of the children, and other things because they were no good, were in the way, and their removal would afford more room for the storage of firewood. There is no direct evidence or evidence from which it can be inferred that the reason she requested the defendant John to remove the stove, refrigerators and other things was because any of the articles were imminently dangerous to life or because of the explosive, dangerous character of the articles. Again, there is no evidence, even by inference, that the situation of the shed at any time, was such as to suggest an investigation or inspection of it and its content, or that a peril had been created by the storage of explosives. In *Humphrey* v. *Twin State Gas & Elect. Co.,* 100 Vt. 414, 422, 139 Atl. 440, 444, 56 A.L.R. 1011, the opinion states:

"The existence of actionable negligence depends, not upon what happened, but upon what reasonably might have been expected to happen. Unless it be shown that a prudent man, situated as the defendant was at the time of his alleged default, knowing what he knew or should have known, would have regarded injury to the plaintiff or one of the class to which he belonged, as likely to result from the act or omission complained of, actionable negligence is not made out."

Actionable negligence is made out only when it appears that a prudent person, in like circumstance, would have thought that injury would be likely to result from his acts or omissions. *Johnson* v. *Cone, et al,* 112 Vt. 459, 462, 28 A.2d 384. See *Hannon* v. *Myrick,* 118 Vt. 428, 432, 111 A.2d 729, and cases cited therein.

Plaintiffs in their supplemental brief, rely heavily on the case of *McGettigan, et al* v. *National Bank of Washington, et al,* 320 F.2d 703 (1963), a District of Columbia Circuit Court case. The factual situation in this case, however, is entirely different from that in the case before us. In that case the defendants were responsible for the care of a building that had been allowed to seriously deteriorate. Doors had disappeared, windows were out and the glass broken. The structure was open to the elements, and was a hangout for persons of questionable occupations and habits. The interior was cluttered with debris and the roof was insecure. The structure was used at times as a sort of a club house for young thieves, who engaged in the practice of stealing flares from various sources, including railroad cars and telephone trucks, and using them for their amusement near the premises. The place was the subject of complaints by neighbors. The place was inspected weekly by the defendants' agent; these inspections disclosed an accumulation of debris. A policeman on several occasions advised the agent of the defendant of the decrepit condition of the premises, the accumulation of junk and the presence of vagrants. The agent agreed to correct the situation, but nothing was done; no effort was made to close the structure, remove the debris, or restrict its use by children, delinquents and vagrants. The Circuit Court held that whether defendants, as owner or occupier of these premises negligently permitted unreasonable risk of harm towards minor plaintiff, a child of the neighborhood, in allowing to be deposited by third persons, in run down building, used at times for a club house by young thieves, flammable flares, and whether any such negligence proximately caused plaintiff's injuries were questions for a jury. It is at once apparent that these circumstances, both as to the conditions of the building and the matter of notice to, and knowledge of, on part of the defendants, as to existing conditions, is wholly different from the case under consideration. There, the defendants were informed about, and knew of the hazardous conditions of the building, and were requested to remedy the situation. Here, as we have seen, there was no evidence that defendants knew, should have known, or could have known that there was anything about the premises likely to cause injury to the plaintiff Georgia.

■ Without evidence of knowledge on part of the defendants of the explosives in the shed, or reason for them to believe that such

were there, we do not believe it can be said that defendants could reasonably anticipate the injury suffered by plaintiff Georgia under the circumstances revealed by the evidence. For necessity of knowledge to impose liability see 38 Am. Jur. Negligence §23, 24; 65 C.J.S. Negligence §5.

Applying the rules set forth herein to the evidence that we have mentioned, it is clearly apparent that there was not substantial evidence upon which a jury acting reasonably could find the defendants negligent as claimed by the plaintiffs. Defendants' motions for directed verdicts should have been granted. Since the verdicts of the jury are the same as those that should have been granted in favor of the defendants, they will not be disturbed.

As we have pointed out, this disposition of the case makes it unnecessary to consider and pass upon plaintiffs' exceptions to the court instructions and their exceptions to the refusal of the court to charge as requested. Entry of Judgment on the jury's verdict for the defendants was without error. *Judgment affirmed.*

**Barney, J.** *concurring.* The essence of this case is an effort to place upon the defendant landlord responsibility for the presence of certain dynamite caps on leased premises, which caps ultimately brought injury to the plaintiff tenant's small daughter. The test of a prima facie case is obviously met if credible evidence is introduced placing within the actual knowledge of the landlord the existence of dynamite caps on the premises, at a time and place imposing upon him a responsibility of removal or warning to his tenants. *Terrill* v. *Spaulding,* 115 Vt. 342, 344, 61 A.2d 611.

This was not the evidence in this case.

The prima facie test may also be met by evidence establishing circumstances placing upon the landlord the burden of knowledge of the safety of the premises, whatever the actual state of that knowledge. *Terrill* v. *Spaulding, supra.* This has two aspects.

The first relates to the condition of all of the premises at the time they are delivered into the possession of the tenants. Here, if there is a hidden and threatening situation which the landlord should be bound to know about, he is under a duty to take steps to protect the tenant, either by giving him notice or correcting the condition, whichever is appropriate. *Masterson* v. *Atherton,* 149 Conn. 302, 179 A.2d 592, 595. For this to be fairly an issue for a jury, some facts must be presented justifying a finding that the dangerous situation actually

existed at a time when it would operate at law to make the landlord chargeable with knowledge of it. But the evidence in this case leaves the time, as well as the manner, in which the blasting caps came to the shelf in the woodshed entirely indeterminate. Only through speculation and conjecture could the event be made purportedly definite, and a verdict so based is insupportable. *Fuller* v. *City of Rutland,* 122 Vt. 284, 289, 171 A.2d 58.

This leaves the one road to liability dependent upon the application of a rule of law holding the landlord, as owner of the property, constructively aware of the condition and contents of the shed at all times. There is such a rule. It applies when evidence is present supporting the conclusion that the landlord had retained control over the part of the premises where the danger existed. *Wool* v. *Larner,* 112 Vt. 431, 435, 26 A.2d 89. Such evidence would support submission of the case to the jury and affirm the denial of a directed verdict on that ground. *Beaulac* v. *Robie,* 92 Vt. 27, 33, 102 Atl. 88; same case, 93 Vt. 275, 107 Atl. 396.

Was there such evidence to support the application of this doctrine here? I have not been able to find it. The matter has to be circumstantial, since there is no evidence of an express term of the rental agreement retaining control of the woodshed area in the landlord. In *Beaulac* v. *Robie, supra,* 93 Vt. at 279, it is stated that the doctrine finds its common application in the case of passages, platforms, steps, stairways and the like used by various tenants of a single structure, over which the landlord has retained control. But the mere presence of such structures does not demonstrate landlord control, as the *Beaulac* case indicates. The responsibility of the landlord relates to parts that can be shown to be undemised. *Soulia* v. *Noyes,* 111 Vt. 323, 327, 16 A.2d 182.

The alleged retained control of the landlord is, under the testimony in this case, related to two circumstances. The first is that two discarded stoves and a refrigerator belonging to the landlord had been left stored in the shed near the shelf where the caps were found. If retained control of the area were otherwise indicated, the presence of these items might be taken to have some corroborative value. But, by themselves, they do not suggest such an inference. If that were so, their presence in cellar, attic or even in the living quarters would be a limitation on the tenant's control of the demised premises.

The other circumstance is that the two apartments in the building had access to this large, undivided shed in the rear of the structure, available for the use of both tenants for the storage of firewood. This access led onto a single platform along the wall where the shelf was located, adjoining and above the wood storage area. It was possible and convenient to go from one tenement to the other by using this platform. Did this make it the type of corridor or passageway necessarily retained by the landlord as undemised? To say that would seem to suggest that adjoining backyards of first floor tenements are also undemised since they permit passage from one rear entrance to another.

But it is not required that we choose between exclusive control by an individual tenant and exclusive control by the landlord. A more accurate description of the situation described by the evidence in this case is that the woodshed was part of the premises demised to the tenants in the building, to be used by them in common. The plaintiff's testimony itself indicates such an understanding. Possession and control was entirely in the tenants, and not in the landlord. 32 Am. Jur. Landlord and Tenant, §664, p. 529. An implicit recognition of tenant control of the shed can be drawn from the request to the landlord to remove the stoves and refrigerator. Access to the shed area by the landlord does not negate tenant control. *Delphia* v. *Proctor,* 124 Vt. 22, 196 A.2d 567.

This was not such an area as required constant supervision and observation on the part of the owner in the manner of an access hall to an apartment, or an entrance-way to a multiple dwelling. Without a duty arising out of control, the imputation of knowledge of danger from the presence of the caps in the area over a period of time does not occur, and no negligence toward the plaintiffs has been shown. The issue of control was raised in the motion for a directed verdict and it should have been granted. *Terrill* v. *Spaulding, supra,* 115 Vt. at 346.

Some suggestion has been made that the rule of *Wool* v. *Larner, supra,* 112 Vt. at 435, inappropriate as it may be, became the law of the case. This may possibly be so, but, if it happened, it came about after the motion for, and ruling on, the directed verdict, and would seem to be no obstruction to the result reached here, in which I concur.

**Holden, C. J.,** dissenting. I am unable to turn aside the errors assigned by the plaintiffs to the court's instructions. The record pre-

sents to my mind issues of negligence and contributory negligence for the jury to decide. It is my opinion that the trial court properly denied the defendants' motion for directed verdicts, but submitted the case on instructions that were inadequately prejudicial. This is particularly true of the infant plaintiff Georgia Winters on the question of contributory negligence.

The evidence is clear, and substantially conceded in the defendants' brief, that the shed which housed the dynamite caps, and the platform by which access was gained were used by the Winters family in common with their adjoining tenants. The common use of the area where the danger resided, in legal contemplation, served the interests of both landlord and tenant. *Wool* v. *Larner,* 112 Vt. 431, 436, 26 A.2d 89.

Passageways, platforms, stairways and other structures used by the various tenants of a single building are deemed to be retained under the landlord's control. As to these areas, the owner owes a duty to the tenants and their guests as invitees. The duty imposed is one of reasonable care. The duty does not arise from the landlord and tenant relationship. It develops from lessor's character as the owner and occupant of the retained area. As to this part of the premises, he owes a duty of reasonable care for the safety of tenants, their families and others on premises at their invitation. It is from these concepts of control and invitation that the law imposes responsibility for injuries to persons lawfully there on the owner rather than the tenant. As Justice Sturtevant has pointed out—"The invitation carries with it some assurance of safety, which the owner must make good, by the exercise of active care if necessary." *Wool* v. *Larner, supra,* 112 Vt. at 346; *Beaulac* v. *Robie,* 93 Vt. 275, 279, 107 Atl. 396. See also *Beaulac* v. *Robie,* 92 Vt. 27, 33, 102 Atl. 88.

It is the opinion of the majority that the defendant land owners should be discharged from this responsibility for the reason that there is no affirmative evidence that either of the defendants had knowledge of the presence of the explosives on the premises over which they had retained control. My search of the record discloses facts from which the jury could infer that the defendant John Unaitis either knew, or should have preceived the presence of danger by the exercise of reasonable vigilance.

This defendant had been on the dairy farm for some seventeen years. The last nine years of this time he had owned and operated the farm. Prior to going on the farm, he had served for three years

in the ordnance department of the Air Force. He had caused blasting operations to be conducted on the premises in the construction of a drainage silo behind one of his barns that was three hundred feet from the shed where the caps were found.

The defendants' son found the detonators on a low shelf against which he was leaning. The shelf was below shoulder height of the boy. The caps were apparently exposed to casual view when he discovered them. The boy testified that he and the other children, including the plaintiff Georgia, "were fooling around" in that area. "I happened to look down and saw the caps." He gave one to the plaintiff.

The defendant John Unaitis testified in a pre-trial deposition that he knew that his children as well as the "tenement kids" played in this area. Before the Winter family moved in, he checked the tenement and the shed area to see if it was presentable. He caused them to be swept up although he made no inspection of the loose parts that had accumulated in the corner area of the platform and shed. There was evidence that prior to the accident, in response to a request by Georgia's mother he had told Mrs. Winter—"some day, when it rained, he would have the men remove the refrigerators, stove and clean out the shed for us."

The defendant Unaitis made no specific denial of knowledge of the presence of the dynamite caps in the shed area. And unlike the other witnesses to the events which preceded the accident, this defendant did not disclaim the ability to identify the cylindrical objects as dynamite caps. See *Southern Cotton Co.* v. *Clements* 25 Ariz. 124, 213 P. 1005, 1008.

To be sure, there was no direct proof that this defendant knew of the presence of the explosives in this area of his premises. But the opportunity for knowledge, when available by the exercise of reasonable care, is the equivalent to knowledge itself. Actual knowledge is not essential. Voluntary ignorance may amount to culpable negligence if the means for detecting danger is available by the exercise of reasonable vigilance. *Thompson* v. *Green Mountain Power Corp.*, 120 Vt. 478, 483, 144 A.2d 786.

I find no error in the decision of the trial court in submitting the case for the jury to judge the defendants' conduct in the light of what he then knew, or should have known by exercising reasonable care for the child's safety.

Although the trial of this cause embraced two actions,—the claim of the parent and that of the child—the trial court made no distinction in its instructions on the issue of contributory negligence. A single blanket instruction was made applicable to both plaintiffs without regard to their respective ages or maturity. This shortage and the failure of the trial court to instruct the jury that any contributory negligence on the part of the father could not be imputed to the daughter were adequately and seasonably called to the court's attention by proper exceptions.

These assignments of error are well founded. The plaintiff Georgia was entitled to an instruction that in encountering the danger which caused her injuries, she was not required to exercise the same degree of care expected of her father. She should have been held only to the exercise of prudence reasonably to be expected of a child of eight, of like mental capacity and experience. *Johnson's Admr.* v. *Rutland Railroad Co.,* 93 Vt. 132, 139, 106 Atl. 682.

The evidence afforded ample room for the jury to find the father guilty of contributory negligence. The defendants stressed the point. Yet, the court made no attempt to separate the issue of contributory negligence in its application to the child as being any different from the standard of care required of her parent. And no precautionary instruction was given to guide the jury away from the tendency to impute the parent's negligence to his daughter. Indeed, the tenor of the charge and the manner in which the case was submitted was such as might lead reasonable triers to believe that this was permissible. Such a consequence would be contrary to our established rule of law. *Johnson's Admr.* v. *Rutland Railroad Co., supra,* 93 Vt. at 142; *Trepeni* v. *Walker,* 120 Vt. 510, 517, 144 A.2d 836.

The instructions further omitted any reference to the importance of common passageways, platforms and other structures used by tenants of multiple dwellings in determining the issue of the owner's control and responsibility. This shortage was not corrected after proper exception.

The failure of the charge to properly instruct on these questions resulted in the submission of the case on an incomplete statement of the issues and the law. In consequence the jury received the case without the ingredients essential to a true verdict.

These deficiencies require a reversal. *Blondin* v. *Carr,* 121 Vt. 157, 161, 151 A.2d 121; *Wortheim* v. *Brace,* 116 Vt. 9, 11, 68 A.2d

719; *Clark* v. *Demars,* 102 Vt. 147, 151, 146 Atl. 812. I would remand these cases for a new trial.