463 P.2d 847

**SPUR FEEDING COMPANY, an Arizona corporation, Appellant and Cross-Appellee,**

v.

**Juan H. FERNANDEZ, surviving father of Carlos Fernandez, Deceased, Appellee and Cross-Appellant.**

**No. 1 CA–CIV 814.**

Court of Appeals of Arizona, Division 1.

Department B.

Jan. 19, 1970.

Rehearing Denied Feb. 6, 1970.

Review Granted March 24, 1970.

Jennings, Strouss & Salmon, by Charles R. Esser, Phoenix, for appellant and cross-appellee.

Tupper, Rapp & DeLeon, by Edward Crehan Rapp, Phoenix, for appellee and cross-appellant.

JACOBSON, Judge.

In this appeal from a jury verdict and judgment of the Superior Court of Maricopa County, the court is asked to review the tragic consequences resulting from children trespassing on land containing dangerous equipment.

Plaintiff-appellee and cross-appellant, Juan H. Fernandez, surviving father of Carlos Fernandez, brought a wrongful death action against appellant-defendant and cross-appellee, Spur Feeding Company and defendant Atchison, Topeka and Santa Fe Railway Company, seeking damages for the death of Carlos Fernandez, a child of the age of three years and eleven months. The trial court directed a verdict in favor of Atchison, Topeka and Santa Fe Railway Company and it is not a party to this appeal. The term defendant as used in this opinion shall therefore refer to Spur Feeding Company.

The defendant, for some 15 months prior to the date of the accident in question, by agreement with Santa Fe Railway, operated and maintained an unloading site for grain at 115th Avenue and Olive Road in Maricopa County. This site is in a rural area with practically no habitation within one mile in any direction of the site. The unloading site was on a spur line of the Santa Fe Railway which brought boxcars of grain to the site. This grain was used by defendant in its cattle feeding operation located approximately three and one-half miles east of the unloading site. At the unloading site was a grain auger which is a power-driven continuous screw approximately 24-feet long and 14 inches in diameter set below ground level. The auger runs from approximately ten inches south of the railroad track, under the railroad track, and then to a pit approximately 24-

feet north of the track where the grain is carried by a continuous belt to a tower. The grain is then discharged from the tower into waiting trucks to be delivered to defendant's cattle feeding operation.

When the unloading process is in operation a boxcar is spotted over the auger channel and the grain is shoved out of the north side of the boxcar into a hopper which funnels the grain into the turning auger. The grain is then carried into the pit and ultimately into the tower and the waiting trucks. At the time the accident in question occurred, defendant had been operating at the unloading site eight to twelve hours a day, six days a week.

Immediately prior to commencing operations at the unloading site, defendant had given written permission to Mr. Presentacion Rodriquez or his designee to remove spilled grain from the unloading site. The paper containing this written permission was given by Rodriquez to Elias Cabazos, a 74-year-old man. Mr. Cabazos would come regularly to the unloading site to remove the grain that was left over after the boxcars had been unloaded, clean the boxcars, place the leftover grain in sacks and use this grain to feed his chickens and other livestock. Mr. Cabazos had been coming to the site for approximately one year prior to the accident and was usually driven there by Cleofas Gutierrez. Mr. Gutierrez, an 80-year-old man, would drive Mr. Cabazos to the site early in the morning, leave him there and return at approximately 4:00 p. m. to pick him up. On the occasions when Mr. Gutierrez transported Mr. Cabazos to and from the unloading site, Mr. Gutierrez never left his truck and had never brought anyone else to the site other than Mr. Cabazos. The evidence is uncontradicted that no small children had been observed at the unloading site during the prior 15 months that defendant operated the same.

On March 8, 1965, the date of the accident, there were four boxcars at the unloading site. When Mr. Gutierrez arrived on the premises at approximately 4:00 p. m.,

one of these boxcars was in the process of being unloaded and the auger was in operation. At this time all of defendant's employees were inside the boxcar. On this particular day Mr. Gutierrez brought with him four minor children and Sarah Hernandez, an aunt of the deceased. Three of these children including the deceased, Carlos, were riding in the back of Mr. Gutierrez' pickup. The oldest of these children was six years old. Mr. Gutierrez parked his pickup at the usual spot near the unloading site and, almost immediately after he stopped, the three children in the back of the pickup jumped out and disappeared from Sarah's view. Sarah immediately started looking for the children and in her search she discovered that the deceased had gone around the boxcars to the south of the track, opposite the unloading operation, had either stepped or fallen into the channel containing the turning grain auger and had been killed. None of defendant's employees were aware of the arrival of Mr. Gutierrez and Sarah or of the presence of any children on the premises until after the accident occurred.

While it is disputed as to whether the auger channel was covered in its entirety, it is undisputed that the small area of the channel south of the railroad tracks had been uncovered for approximately fifteen minutes prior to the accident because of a squeaking bearing. It is apparent from the testimony that this uncovered portion of the auger south of the track is where the child had fallen into the auger channel. The premises themselves did not contain any "no trespassing" signs nor were there any guards or safety rails around the auger channel.

A motion for a directed verdict was made by the defendant at the close of the plaintiff's case which was denied. The trial court submitted the case to the jury on the theory of "attractive nuisance." The jury returned a verdict in favor of the plaintiff and against the defendant and assessed damages in the sum of $20,000.00. On appropriate post-trial motions the trial court directed the plaintiff to accept a remittitur of $2,500.00 or it would grant a new trial. The plaintiff accepted the remittitur and now cross-appeals from this action of the trial court. All other post-trial motions of the defendant were denied.

The defendant contends on appeal that the trial court erred in failing to grant its motion for a directed verdict on the grounds that the deceased was a trespasser and that the facts here do not justify the application of the "attractive nuisance" doctrine. Defendant also contends that if this doctrine is applicable, the trial court erred in its instructions on the same and further, that counsel for plaintiff was guilty of improper closing arguments to the jury.

The plaintiff counters, first, with the argument that defendant has no standing to take advantage of the deceased's status as a trespasser, or any other status of the deceased since defendant is not the owner of the land at the unloading site but rather a mere licensee. It is clear that the property in question is actually owned by Santa Fe Railway. There was testimony that no lease existed between Santa Fe and defendant but that defendant had permission to use the site for its unloading operation. The evidence also discloses that all the equipment located at the site was the property of defendant, and that defendant had been in operation at this site for fifteen months prior to the accident for eight to twelve hours per day, six days a week. There is sufficient evidence here to show that defendant fell within the definition of "possessor" as that term is defined by Restatement (Second) of Torts sec. 328E(a) (1965): "a person who is in occupation of the land with intent to control it." Moreover plaintiff's complaint alleges that defendant "was in the exclusive possession" of the property in question which allegation was admitted by the defendant. In view of such an allegation, plaintiff cannot now urge the contrary. Therefore defendant is entitled to avail itself of any defenses applicable to owners or possessors of land.

■ Plaintiff next contends that the deceased in this case was not a trespasser, but a licensee, and therefore defendant's first contention is without merit. Plaintiff arrives at this conclusion by arguing that Mr. Cabazos was a licensee with permission to come on the premises to remove spilled grain. Mr. Gutierrez, who drove Mr. Cabazos to the property, was neither told to get off the property nor was informed by "no trespassing" signs that he was not allowed on the property and was therefore a licensee by consent. Since Mr. Gutierrez was a licensee, then persons he brought onto the premises were also licensees, including the deceased. Plaintiff's reasoning in this regard is incorrect. "Trespasser", as that term is used in defining the duty of a possessor of land, is defined as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts sec. 329 (1965). Since defendant did not even know of the presence of the deceased on the premises this consent could not have been expressly given. Nor does the fact that Mr. Gutierrez was allowed to come on the premises for the limited purpose of delivering or picking up Mr. Cabazos give rise to any inference of implied consent that other persons could come on the premises. We therefore hold that the deceased was a trespasser, insofar as defining the legal duty owed to him by the defendant.

This, then, brings us to the crux of defendant's argument on appeal. The duty of a possessor of land to trespassing children has been delineated in Arizona as that duty set forth under Restatement (Second) of Torts sec. 339 (1965) entitled "Artificial Conditions Highly Dangerous to Trespassing Children." Marble v. Parham, 3 Ariz.App. 585, 416 P.2d 1006 (1966); MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958). While courts and counsel continue to refer to this duty imposed upon possessors of land as the doctrine of "attractive nuisance", the more recent cases make it apparent that this is a misnomer. The requirement that before liability may attach the child must be attracted to the premises by the instrument (nuisance) which causes him harm, has been all but abandoned. MacNeil v. Perkins, supra; Buckeye Irrigation Co. v. Askren, 45 Ariz. 566, 46 P.2d 1068 (1935). In the interests of judicial clarity, and if labels must be attached, we prefer to use the term "doctrine of trespassing children."

■■ In order for liability to attach to the possessor of land for harm befalling trespassing children, the Restatement requires that "the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass." Restatement (Second) of Torts sec. 339(a) (1965). Defendant contends that there is no evidence in this case that defendant knew or had reason to know that children were likely to trespass on the property in question and therefore, since the requirement of the Restatement is not met, no liability attaches. Inasmuch as the transcript is completely silent as to any small children being on the premises prior to this accident, it is obvious the plaintiff failed to prove the defendant "knew" of children trespassing on the property. Whether the defendant "had reason to know" that children were likely to trespass presents a closer question. Merely because children have not trespassed in the past does not relieve the possessor of land from liability if there is some reasonable expectation that children might trespass. For example, liability has been imposed where the property is in close proximity to a public place, Clark v. Pacific Gas & Electric Co., 118 Cal.App. 344, 5 P.2d 58 (1931), petition for rehearing denied, 118 Cal.App. 344, 6 P.2d 297 (1931); or in close proximity to a housing development, Long v. Standard Oil Co. of California, 92 Cal.App.2d 455, 207 P.2d 837 (1949); or in close proximity to a park or playground, Wytupeck v. City of Camden, 25 N.J. 450, 136 A.2d 887 (1957); or where the property is leased to a family with small children, Marble v. Parham, supra.

In our opinion the question of "reason to know", is in actuality a question of foreseeability of trespassers. While the question of foreseeability is normally one for the jury, Sefert v. Owen, 10 Ariz.App. 483, 460 P.2d 19 (1969), the question of foreseeability can be one of law where the evidence is such that reasonable men cannot differ as to its application. See Ray v. Tucson Medical Center, 72 Ariz. 22, 230 P. 2d 220 (1951).

In this case the only circumstance which could possibly give rise to any inference that the defendant should have foreseen the possibility of trespassing children is the location of the property adjacent to a public road. However, this particular public road is located in the middle of a farming area and the evidence is silent as to the amount of traffic on such road. Conversely, because of the isolated position of the property, the lack of habitation in the immediate surrounding area, the lack of evidence of children on the premises in the past, the fact that both Mr. Cabazos and Mr. Gutierrez were elderly gentlemen and the probability of them having small minor children in their care being remote, all weigh overwhelmingly in favor of the contention that defendant could not reasonably have foreseen the likelihood of children trespassing on its premises. In this case we hold, as a matter of law, that there was not sufficient evidence to submit to the jury the question of the foreseeability of trespassing children. The plaintiff having failed to sustain its burden of proof under the doctrine of trespassing children, the trial court should have directed a verdict in favor of the defendant at the close of plaintiff's case.

The plaintiff also requests this court to abolish the common law defenses available to owners or possessors of land. We feel that in the case of trespassing children this has already been effectively accomplished. The five elements set forth in Restatement (Second) of Torts sec. 339 (1965) under the doctrine of trespassing children are, in our opinion, merely elements of general negligence law.

Because of our determination in this matter, we need not consider the other contentions raised by defendant or by plaintiff's cross-appeal.

Judgment reversed with directions to enter judgment in favor of the defendant.

EUBANK, P. J., and HAIRE, J., concur.