472 P.2d 12

**SPUR FEEDING COMPANY, an Arizona corporation, Appellant and Cross-Appellee,**

v.

**Juan H. FERNANDEZ, surviving father of Carlos Fernandez, Deceased, Appellee and Cross-Appellant.**

**No. 9978–PR.**

Supreme Court of Arizona,
In Banc.
June 26, 1970.

Jennings, Strouss, Salmon & Trask, by Charles R. Esser, Phoenix, for appellant and cross-appellee.

Tupper, Rapp & DeLeon, Phoenix, for appellee and cross-appellant.

STRUCKMEYER, Vice Chief Justice.

This is an action for damages for the wrongful death of Carlos Fernandez, the three years, eleven-month son of the plaintiff, Juan Fernandez. After trial, the jury returned a verdict in favor of the plaintiff and against defendant Spur Feeding Company. From the final judgment, the Spur Feeding Company appealed and the Court of Appeals reversed. Opinion of the Court of Appeals, 11 Ariz.App. 263, 463 P.2d 847, vacated. Judgment of the Superior Court affirmed.

In 1965 the Santa Fe Railway Company maintained a trunk line extending along the north side of Olive Avenue in Maricopa County, Arizona. At a point near 115th Avenue and Olive a spur was constructed which was used as an unloading site for cattle feed. Defendant, whose business was feeding cattle, was licensed by the Santa Fe Railway Company to unload feed, shipped in boxcars, at this site. It constructed a mechanical unloading device by which feed was transferred from the Santa Fe's boxcars to its trucks in this manner: An electric powerdriven, continuous screw described as an auger, 14 inches in diameter, enclosed in a concrete box sunk flush with the ground, ran 24 feet from a point 10 inches south of the Santa Fe spur track to a pit located to the north of the spur track. A boxcar loaded with feed was spotted over the auger and the feed was pushed out of the side door of the boxcar into a hopper located on the north side where the feed dropped into the auger channel. The auger then carried the feed into a pit where it was lifted by a continuous belt with buckets and deposited into defendant's trucks. This unloading device had been in operation for about fifteen months and was in use eight to twelve hours a day, six days a week, at the time Carlos Fernandez met his death.

The defendant authorized in writing one Presentacion Rodriquez or his designee to remove spilled feed from the spur siding.

Rodriquez designated Elias Cabazos. It was Cabazos' practice once or twice a week to remove the feed which was spilled after the boxcars had been unloaded. He also cleaned out the cars, stored the feed in sacks and took it home for chickens and animals.

On March 8, 1965, four cars were at the unloading site. One of the cars was being unloaded by defendant's employees. Cleofes Gutierrez, a friend of Cabazos, arrived at the unloading site in a pickup truck at about 4:00 p. m. to pick up Cabazos, who had been brought to the site earlier that day. Gutierrez brought with him Sarah Fernandez, sister of the plaintiff, and four children whom she was babysitting. One of these was the decedent, Carlos Fernandez, who was riding in the back of the truck with two other boys.

Gutierrez parked the pickup truck on the railroad right-of-way near the boxcar which was being unloaded. Since the four employees of Spur were inside the boxcar, they were unaware of the presence of the truck or any of the children. The three young boys jumped out of the back of the truck and disappeared from the sight of the babysitter, Sarah Fernandez. The remains of the child, Carlos, were subsequently found dismembered in the auger.

Some facts should be emphasized. The trunk line ran on the north side of and adjacent to Olive Avenue. The spur was just to the north of the trunk line. Neither trunk nor spur was fenced. The grain was unloaded through a side door which opened on the north side of the boxcar. The auger passed under the spur track, originating at a point 10 inches to the south of the spur track and ending 24 feet north of its point of origin. Hence, a person walking along the south side of the tracks or approaching the unloading site from Olive Avenue could not be seen by those inside the boxcar or working north of the boxcars.

It was established that there were covers for the entire length of the auger, but the evidence justifies the belief that while the covers were used north of the spur track, covers were either never used or had not been used for some considerable period of time to cover the auger from its point of origin 10 inches south of the spur track and over that part which ran under the boxcar. The evidence substantially supports the belief that the decedent child, Carlos, had gone around the boxcars to the south side of the spur track and had either stepped or fallen into the auger at its southern end or was drawn into it while playing.

It is plaintiff's position that the defendant carelessly and negligently permitted the auger to remain in a dangerous and open condition without its covers and carelessly and negligently failed to take any precaution to protect children who might be lured or attracted to the machinery.

It is the defendant's position that this unloading device was remote from any human habitation, in a farming area, the nearest buildings being somewhat farther than one-half mile; and that, since there was no evidence of other trespasses by children, there was no duty to anticipate and protect against their presence. We disagree.

It is, of course, the rule that the owner or occupier of property owes no duty to trespassers except to neither willfully nor intentionally inflict an injury upon them. Buckeye Irrigation Co. v. Askren, 45 Ariz. 566, 46 P.2d 1068. However, the attractive nuisance doctrine is an exception as to children. It has long been the law of this jurisdiction.

The attractive nuisance doctrine was first recognized in Salladay v. Old Dominion etc. Min. Co., 12 Ariz. 124, 100 P. 441 (1909), where the Territorial Supreme Court held that the decision in Sioux City & Pacific R. R. Co. v. Stout, 84 U.S. (17 Wall.) 657, 21 L.Ed. 745, and the subsequent case of Union Pac. Ry. Co. v. McDonald, 152 U.S. 262, 14 S.Ct. 619, 38 L.Ed. 434, were binding upon the court. The court examined many of the cases in which the doctrine had

either been followed, repudiated or distinguished. It concluded:

> "It would be profitless to attempt to review these decisions here. Broadly speaking, they may be divided into four classes: (1) Where the turntable doctrine is entirely repudiated; (2) Where the doctrine is accepted, but confined to turntables *or to attractive dangerous machinery*; (3) Where it is held to cover various latent and hidden dangers; (4) Where it is held to cover, or is extended to, cases of patent and visible alluring dangers other than those arising from mechanical appliances, defective or otherwise." (Emphasis supplied.) 12 Ariz. at 129, 100 P. at 442.

The court classified an open and visible flume into which a child had fallen in the fourth category as an alluring danger other than arising from mechanical appliances, holding that the doctrine would not be applied to cases in category (4) but would be confined to " * * * such conditions as the Supreme Court (of the United States) had before it and was passed upon in the two cases cited * * *."

The second case to reach this court in which the attractive nuisance doctrine was relied upon was Southwest Cotton Co. v. Clements, 25 Ariz. 124, 213 P. 1005 (1923). In its opinion the court quoted this language from Thompson on Negligence, § 1004:

> "As a general rule, he [owner or occupier] is not bound to keep his premises safe, or in any particular condition for the benefit of trespassing children of his neighbors, or for the benefit of children who occupy no more favorable position than that of bare licensees. A well-grounded exception to the foregoing principles is that one who artificially brings or creates upon his premises any dangerous thing, which from its nature has a tendency to attract the childish instincts of children to play with it, is bound, as a mere matter of social duty, to take such reasonable precautions as the circumstances admit of, to the end

that they may be protected from injury while so playing with it, or coming in its vicinity." 25 Ariz. at 132, 133, 213 P. at 1009.

In the next case, Salt River Valley Water Users' Association v. Compton, 39 Ariz. 491, 8 P.2d 249 (1932), and on rehearing, 40 Ariz. 282, 11 P.2d 839 (1932), this court re-examined extensively the law of attractive nuisances. The decision recognized the classifications established by Salladay, stating:

> "This decision never has been reversed or qualified by this court." 39 Ariz. at 504.

The court was of the view that an electric pole was within the third classification which a jury could find " * * * might under some circumstances be such an attractive nuisance as would support a verdict in favor of a child who was injured thereon."

We can find no suggestion in any subsequent case that the categories (2) and (3) recognized in Salladay as attractive nuisances have been repudiated or abandoned as the appropriate subject matter of the doctrine. Beyond argument, defendant's unloading operation, including as it did moving machinery, was alluring and attractive to children. The use of an uncovered auger must be catagorized as "attractive dangerous machinery" which the jury might find imposed such a duty upon defendant to protect trespassing children as the special circumstances of the case warranted.

Defendant relies primarily upon the language of § 339, Restatement (Second) of Torts, asserting the failure of proof of the elements set forth in Clause (a) thereof. We observed in Buckeye Irrigation Company v. Askren, supra, that:

> "Because of the varying facts of each case, it is difficult, if not impossible, to state a rule of general application, but we think for practical purposes the American Law Institute's Restatement of the Law of Torts, § 339 has reasonably done so." 45 Ariz. at 574, 575, 46 P.2d at 1071.

The Restatement (Second) of Torts, § 339 (a), provides that:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, * * *." [1]

■ Defendant emphasizes that the record is devoid of any evidence that a child was ever attracted to the premises before. But we think this argument ignores the alternative in Clause (a) that the possessor of premises has reason to know that children are likely to trespass. It is not necessary for a child to be killed or maimed before there is notice that children may be attracted to dangerous machinery. A jury could find that this unloading operation was adjacent to a public thoroughfare, unfenced and wholly unprotected from intrusion by trespassers and that parts of the machinery stood substantially higher than the adjacent boxcars and hence were plainly observable at a distance, so as to be alluring to the curious and unsophisticated. True, the unloading device is located in a farming area, remote from places where children usually congregate, but a jury could conclude from the foregoing stated facts that the defendant had reason to know that those children traveling along the public highway by horse, bicycle or on foot or who might be brought by others into

the vicinity of the unloading device would likely be attracted to it.

Our conclusions find support in the principle expressed in § 369 of the Restatement (Second) of Torts, reading:

"Conditions Dangerous to Children Deviating From Adjacent Highway

A possessor of land abutting upon a public highway is subject to liability for physical harm caused to children by an artificial condition maintained by him on the land so close to the highway that it involves an unreasonable risk to such children because of their tendency to deviate from the highway."

Comment a to § 369 recognizes that the basis for actionable negligence is similar to that found in § 339:

"a. This Section is a special application of the rule stated in § 368, Clause (b). It involves the same general principle as § 339; and as in the case of children who trespass, a condition dangerous to children who may deviate from the highway is frequently called an 'attractive nuisance,' particularly where the child is tempted to intermeddle with the condition." Comment a, § 369.

■ We are also impressed with the relative significance of Clause (d) of § 339 of the Restatement which could be considered in this instance of primary importance in arriving at a decision in the case. Clause (d) provides that the possessor of land is subject to liability to trespassing children if "the utility to the

---

1. "§ 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, * * *." The utility of maintaining the auger without its cover plates and the burden of keeping the covers over the auger are substantially infinitesimal as compared with the risk to an occasional trespassing child. A jury might therefore be led to the conclusion that defendant failed in its duty to exercise reasonable care.

This brings us to the defendant's complaint that the court below erred in instructing the jury. The court without objection by either party read the whole of § 339 of the Restatement as part of its instruction to the jury. On its own volition it added to Clause (a) this language: "* * * or if, as a reasonable person should have known, a child may be brought upon the premises under the circumstances then existing." Defendant objected to the addition on the ground that there was no evidence in the record to support a conclusion that a child "may be brought upon the premises," urging that it is prejudicial error to give an instruction to the jury when there is no substantial evidence to support it.

█ We agree that it is reversible error to instruct upon a theory which is not supported by facts to be found in the record, Beliak v. Plants, 84 Ariz. 211, 326 P.2d 36, since the court thereby invites the jury to speculate as to possible non-existent circumstances. However, the alternative in Clause (a) of the Restatement (Second) of Torts, that the possessor is liable if he "has reason to know that children are likely to trespass", advances a condition which by its inherent nature is somewhat speculative. A jury must infer from all the circumstances of the case whether there was reason to know that children were likely to trespass.

█ The circumstances which the jury could consider were the alluring and attractive nature of defendant's stationary machinery, its close proximity to a well-traveled public road, the lack of a fence or any gates in the roadways leading onto the spur which might indicate an intolerance for trespassers, the want of adequate signs prohibiting trespassers at the roadways leading onto the spur, and the foreseeable possibility that small children might be brought to the vicinity of the machinery by others.

█ This last possibility was, of course, only one of the many circumstances which a jury might feel a possessor ought to consider, but it was a circumstance which had a basis in the evidence. Small children were brought to the unloading site. While ordinarily a trial court should not single out any particular or individual factual aspect of litigation for special instructions since there is the danger that the jury may unduly attach significance to it, we do not think that prejudicial error was committed. The jury might conclude that a reasonable prudent person would know that children could be brought upon the premises. That children might be brought to the premises in the particular manner as shown by the circumstances of this case is not necessarily anticipatable, but that children could be brought for this or other reasons was proper for the jury to consider in deciding what a reasonable prudent person would know was likely to occur.

█ Finally, defendant complains that during the closing remarks to the jury the plaintiff argued that the auger was a hidden, latent trap for the unwary whether they were four or forty, child or adult, and that defendant had a duty to anyone coming on the premises to guard against a dangerous instrumentality of this kind. The defendant objected to the plaintiff's argument, to which the court replied that it would instruct the jury as to the law of the case. The trial court thereafter instructed without objection on the duty of a possessor of land to a trespasser. As to the argument that the auger was a trap for the unwary, be they four or forty, this was plaintiff's concept of the circumstances attendant on the death of the child. The

argument that defendant had a duty to guard against such a dangerous instrumentality is not a statement as to the law but an expression of plaintiff's views as to defendant's obligation under the law as applied to the facts of this case.

The jury returned a verdict in the sum of $20,000.00 in favor of the plaintiff. Pursuant to the provisions of Rule 59(i), 16 A.R.S. the trial judge ordered a remittitur in the amount of $2,500.00. The plaintiff has cross-appealed, urging that the amount of damages is a question particularly within the province of the jury. It has, however, long been the rule in this jurisdiction that the exercise of the power of remittitur rests in the sound discretion of the court, Southern Pac. Co. v. Tomlinson, 4 Ariz. 126, 33 P. 710 (1893), reversed on other grounds, 163 U.S. 369, 16 S.Ct. 1171, 41 L.Ed. 193. And see, e. g., Borrow v. El Dorado Lodge, 75 Ariz. 139, 252 P.2d 791. Where, as here, there is no fixed criteria to measure damages for the death of a four-year-old child, we think it is well within the province of the trial judge to exercise the court's sound discretion.

Judgment affirmed.

LOCKWOOD, C. J., and UDALL, McFARLAND and HAYS, JJ., concur.