IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**MATTHEW CAVALLO, ET AL.,**
*Plaintiffs/Appellants,*

*v.*

**PHOENIX HEALTH PLANS, INC.,**
*Defendant/Appellee.*

No. CV-21-0051-PR
**Filed October 20, 2022**

Appeal from the Superior Court in Maricopa County
The Honorable Timothy J. Thomason, Judge
No. CV2016-015531
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
250 Ariz. 525 (App. 2021)
**VACATED IN PART**

COUNSEL:

Steven C. Dawson (argued), Anita Rosenthal, Aaron Dawson, Sander Dawson, Dawson & Rosenthal, P.C., Sedona, Attorneys for Matthew and Jocelyn Cavallo

Michael W. Sillyman, Paul S. Gerding, Jr., Jonathan S. Schultz (argued), Jeffrey M. Giancana, Kutak Rock LLP, Scottsdale, Attorneys for Phoenix Health Plans, Inc.

Erin Rose Ronstadt, Ronstadt Law, PLLC, Phoenix, Peter S. Sessions, Kantor & Kantor LLP, Northridge, California, Attorneys for Amicus Curiae United Policyholders

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix, Attorney for Amici Curiae for Arizona Association for Justice and Arizona Trial Lawyers Association

———————————

JUSTICE KING authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, and MONTGOMERY joined.

———————————

JUSTICE KING, Opinion of the Court:

¶1        This case requires us to evaluate whether the trial court erred in instructing the jury on waiver and mitigation of damages in the trial of a tort claim for first-party insurance bad faith.[1]    We hold the waiver instruction was improperly given and we remand for a new trial on that basis.    On the issue of mitigation of damages, we hold that a jury instruction based on Restatement (Second) of Torts § 918 (Am. L. Inst. 1979) is appropriate.

## I.    BACKGROUND

¶2        Matthew Cavallo was diagnosed with multiple sclerosis ("MS").    In 2007, Cavallo began receiving infusions of Tysabri, a medication manufactured by Biogen that helps prevent or reduce the frequency and severity of MS symptoms.    Some MS patients who are regularly administered Tysabri have an increased risk of relapse resulting in recurring MS symptoms if they do not receive a dose of Tysabri within ninety days of their last dose.    Tysabri may only be administered through

---

[1] "Bad faith actions against insurers are generally classified as either first- or third-party claims."  *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 258 (1990).    The classification is "based on the type of insurance coverage provided by the policy."  *Id.*    "First-party coverage arises when the insurer contracts to pay benefits directly to the insured," such as "health and accident, life, disability, homeowner's, fire, title, and property damage insurance."  *Id.*    "[T]hird-party coverage arises when the insurer contracts to indemnify the insured against liability to third parties."  *Id.*

Tysabri Outreach: Unified Commitment to Health ("TOUCH") certified clinics. The TOUCH program is a Biogen distribution program that was developed to promote the safety of Tysabri treatments.

**¶3** In 2015, Cavallo purchased a health insurance plan (the "Plan") from Phoenix Health Plans ("PHP") with coverage beginning on January 1, 2016. The Plan covered Tysabri, but only if the patient received prior authorization from PHP. The Plan provided no out-of-network benefits, unless a medically necessary treatment was unavailable in network. In December 2015, just before the Plan became effective, Cavallo received an infusion of Tysabri.

**¶4** Christina Oth, the MS coordinator for Cavallo's medical provider, testified at trial that she was attempting to schedule Cavallo's next infusion of Tysabri when she learned Chandler Regional Medical Center ("Chandler Regional") was both TOUCH certified and within PHP's network. On February 19, 2016, Oth submitted a prior-authorization request to PHP for Cavallo to receive his next infusion of Tysabri at Chandler Regional. In response, a PHP representative, Fabian Ruiz, incorrectly informed Oth that Chandler Regional was not within the Plan's network and Cavallo did not have out-of-network benefits under the Plan. Oth was then provided a list of PHP's in-network facilities, but those facilities were not certified to provide Tysabri infusions. Thereafter, Oth purportedly cancelled Cavallo's prior-authorization request for the Tysabri infusion.

**¶5** Oth pursued a dose of Tysabri for Cavallo through Biogen's free drug program. On February 23, 2016, Biogen approved the free dose of Tysabri for Cavallo, although he would have been responsible for an administration fee of approximately $150.00. Cavallo declined Biogen's offer.

**¶6** On March 16, 2016, Cavallo informed PHP that he was experiencing a recurrence of his MS symptoms. PHP began a medical necessity review of Cavallo's requested treatment. PHP concluded it could not determine whether Tysabri was medically necessary for Cavallo and requested a physician review. PHP also ascertained that Chandler Regional was, in fact, in its provider network. PHP's reviewing physician initially determined that the treatment was not medically necessary for Cavallo but later approved it after discussing the treatment with Cavallo's neurologist.

¶7             On March 30, 2016, PHP informed Cavallo that it had approved coverage for him to receive the Tysabri infusion.   On April 4, 2016, 117 days after his last infusion, Cavallo received the Tysabri infusion at Chandler Regional.   But, by that time, Cavallo had allegedly already experienced a recurrence of his MS symptoms, including loss of fine motor control, weakness in his arm, numbness, and a reduction in mental functioning.

¶8             Cavallo sued PHP for insurance bad faith.   During trial, Cavallo argued: (1) PHP unreasonably and intentionally denied and delayed his claim for Tysabri from February to late March 2016, even after learning he had experienced a recurrence of his MS symptoms; (2) pursuant to its policies, PHP purposefully trained its employees to tell providers and insureds that health plans like Cavallo's did not permit out-of-network benefits, and did not educate employees on the medical necessity exception; (3) PHP designed an overly complex system for processing claims and trained employees to require an insured to identify an in-network facility before it would review a claim; and (4) PHP incentivized its employees to reduce costs by delaying and denying claims.   Cavallo alleged PHP undertook these efforts to avoid paying for covered out-of-network services.

¶9             PHP countered that it handled Cavallo's claim reasonably, given the information available to it.   In particular, PHP argued: (1) Ruiz made a good faith mistake regarding Chandler Regional's network status; (2) Cavallo relieved PHP of its obligations pertaining to Cavallo's initial request for coverage in February 2016 when Oth purportedly cancelled that prior-authorization request; and (3) Oth then failed to sufficiently communicate with PHP regarding Cavallo's claim.   PHP also argued Cavallo failed to mitigate his damages by declining to accept the dose of Tysabri offered by Biogen.

¶10             PHP asked the trial court to instruct the jury on (1) waiver, in the form of a contract waiver instruction; and (2) mitigation of damages. Cavallo opposed the instructions.   Cavallo argued waiver is a contract defense that does not apply to an insurance bad faith claim, and a waiver instruction would confuse the jury into thinking Cavallo had waived the implied duty of good faith and fair dealing.   Cavallo further claimed a mitigation instruction was improper because the mitigation doctrine does not require a party to waive a right, and if Cavallo had accepted the free

Tysabri dose, he would have waived his right to receive reimbursement from PHP by failing to obtain prior authorization.

¶11        The trial court granted PHP's request for both jury instructions.   It gave the Revised Arizona Jury Instructions' ("RAJI") contract waiver instruction:

> A party to a contract may waive the other party's duty to perform. "Performance" refers to what a party agreed to do as his part of the contract. Waiver is either the express, voluntary, and intentional relinquishment of a known right, or it is conduct that is inconsistent with an intent to assert the right. By accepting performance known to be deficient, a party has waived the right to reject the contract on the basis of that performance. If Mr. Cavallo has waived a promised performance, then [PHP] is no longer bound to perform on that promise and Mr. Cavallo is not entitled to damages for that particular non-performance. [PHP] has the burden of proving waiver.

*See* Rev. Ariz. Jury Instr. (Civ.) Contract 13, at 16 (7th ed. 2021).   The trial court also instructed the jury on mitigation of damages:

> [PHP] claims that Mr. Cavallo did not make reasonable efforts to prevent or reduce damages. Mr. Cavallo may not recover for any damages that could have been avoided without undue risk, burden or humiliation. [PHP] must prove: A. Mr. Cavallo did not make reasonable efforts to prevent or reduce damages; B. If Mr. Cavallo had acted reasonably, Mr. Cavallo could have prevented or reduced damages; and C. The amount of plaintiff's damages that could have been prevented or reduced through reasonable efforts.

¶12        The jury returned a verdict in favor of PHP.   Cavallo moved for a new trial, arguing the trial court prejudicially erred by instructing the jury on waiver and mitigation of damages.   The court denied the motion. As to the waiver instruction, the court explained that "any contractual provision can be waived" and it was "up to the jury to decide" if Cavallo had waived any of the Plan's provisions.   Further, PHP was not "arguing

5

that [Cavallo] waived the covenant of good faith and fair dealing entirely and that PHP owed no duty of good faith and fair dealing at all." Moreover, the mitigation instruction was appropriate because "[a]ny contracting party has a duty to mitigate damages by avoiding consequences of known breaches." And Cavallo was not prejudiced because "[t]he failure to mitigate instruction dealt ONLY with damages," which "only came into play if the defendants were found liable." Because the jury rendered a defense verdict, "[t]he jury never reached the issue of damages and thus never considered mitigation per the instructions."

¶13 The court of appeals affirmed. *Cavallo v. Phx. Health Plans, Inc.*, 250 Ariz. 525, 537 ¶ 45 (App. 2021). The court concluded "the superior court did not abuse its discretion by giving the waiver instruction in this case because it was not contrary to the law applicable to an insurance bad-faith claim and did not mislead the jury." *Id.* at 532 ¶ 23. The court further explained it "need not address whether the mitigation instruction was contrary to the law because even assuming it was erroneous, it caused [Cavallo] no prejudice," as the jury returned a defense verdict and therefore did not consider the mitigation of damages instruction. *Id.* at 533 ¶ 26.

¶14 Cavallo filed a petition for review. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II.    DISCUSSION

¶15 "We review for abuse of discretion 'whether the trial court erred in giving . . . requested jury instructions.'" *State v. Dann*, 220 Ariz. 351, 363–64 ¶ 51 (2009) (quoting *State ex rel. Thomas v. Granville*, 211 Ariz. 468, 471 ¶ 8 (2005)). "We review de novo whether jury instructions adequately state the law." *State v. Tucker*, 215 Ariz. 298, 310 ¶ 27 (2007).

### A.  Insurance Bad Faith and a Waiver Instruction

¶16 The first issue before us is whether the trial court improperly gave a waiver jury instruction where Cavallo alleged a first-party insurance bad faith tort claim and there was no breach of contract claim.

¶17 "The law implies a covenant of good faith and fair dealing in every contract," which is a duty that "arises by virtue of a contractual

relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* "The covenant of good faith and fair dealing may be breached even though the express covenants of the contract are fully performed." *Id.* at 163.

¶18 "The breach of contractual covenants ordinarily sounds in contract." *Id.* Nonetheless, "because of the special relationship between an insurer and its insured, the insured may maintain an action to recover tort damages if the insurer, by an intentional act, also breaches the implied covenant by failing to deal fairly and honestly with its insured's claim or by failing to give equal and fair consideration to the insured's interests."[2] *Id.* Indeed, "one of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection." *Id.* at 155.

¶19 A bad faith claim "derive[s] from the . . . duty of good faith and fair dealing." *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 259 (1990). In the insurance context, "[t]he tort of bad faith arises when the insurance company intentionally denies, fails to process or pay a claim without a reasonable basis for such action." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190 (1981). "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978)).

---

[2] "The 'intent' required here is an 'evil hand' — the intent to do the act. Mere negligence or inadvertence is not sufficient — the insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds. But an 'evil mind' is not required; the insurer need not intend to harm the insured." *Rawlings*, 151 Ariz. at 160. Instead, "[t]o be liable for tort damages, it need only to have intended its act or omission, lacking a founded belief that such conduct was permitted by the policy." *Id.*

¶20     We start with an evaluation of whether the record supports a waiver jury instruction in the trial of Cavallo's insurance bad faith claim. "It is reversible error to instruct the jury on a legal theory which is not supported by the evidence." *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 539 (1982); *see also Spur Feeding Co. v. Fernandez*, 106 Ariz. 143, 148 (1970) ("We agree that it is reversible error to instruct upon a theory which is not supported by facts to be found in the record . . . since the court thereby invites the jury to speculate as to possible non-existent circumstances."); *see also Beliak v. Plants*, 84 Ariz. 211, 215 (1958) ("[T]he record is devoid of any evidence, even when considered in the light most favorable to defendant's theory of the case, justifying the court in giving the . . . instruction . . . . It therefore constituted reversible error to give it.").

¶21     The seminal argument from PHP was that Oth relieved PHP of its duty with respect to Cavallo's February 2016 prior-authorization request by cancelling it, and Cavallo thereby waived his right to performance on the February 2016 prior-authorization request. Indeed, PHP made much of this point during its closing argument: "Mr. Cavallo's provider[] expressly cancelled the February 2016 prior authorization relieving [PHP] from any duty to perform on that initial authorization. She cancelled it."

¶22     "Waiver is the voluntary and intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right." *City of Tucson v. Koerber*, 82 Ariz. 347, 356 (1957); *see also Mohave Cnty. v. Mohave-Kingman Ests., Inc.*, 120 Ariz. 417, 421 (1978) ("Waiver is an intentional relinquishment of a known right."); *Societe Jean Nicolas Et Fils v. Mousseux*, 123 Ariz. 59, 61 (1979) ("We find no clear showing of an intent to waive a right as is required by our case law."). Thus, as a starting point, for Cavallo to have waived PHP's duty to perform under the contract, Cavallo must have voluntarily and intentionally relinquished a known right with respect to the February 2016 prior-authorization request.

¶23     For his bad faith claim, Cavallo alleged PHP had a policy of denying out-of-network claims without exploring whether each claim was medically necessary and failed to properly train employees on the exception for medical necessity. Cavallo claimed PHP compounded its error by incorrectly denying Cavallo's claim and then causing delay before approving his claim.

¶24        The evidence in the record, however, does not demonstrate that Cavallo voluntarily and intentionally waived a known right when Oth allegedly cancelled the February 2016 prior-authorization request because neither Cavallo nor Oth knew at that time that: (1) PHP had an alleged policy of denying out-of-network claims without exploring whether the claim was medically necessary; and (2) PHP had incorrectly informed Oth that Chandler Regional was out of network and Cavallo did not have out-of-network benefits.    To the contrary, Ruiz testified that Oth requested cancellation of the February 2016 prior-authorization request only after he told her the Tysabri treatment was outside the Plan's coverage.   PHP was required "to fully disclose to [Cavallo] all pertinent benefits, coverages or other provisions of [the] insurance policy or insurance contract under which a claim is presented."   *See* Ariz. Admin. Code R20-6-801(D)(1).   Thus, the record does not support that Cavallo voluntarily and intentionally relinquished a known right pertaining to his February 2016 prior-authorization request.

¶25        PHP's claim that we can find a voluntary and intentional relinquishment of a known right based on Oth's subsequent pursuit of Biogen's free drug program is unavailing.   Oth's conduct does not demonstrate that Cavallo knew about PHP's alleged policies and the inaccuracy of PHP's statements to Oth, and yet still voluntarily and intentionally cancelled the February 2016 prior-authorization request.  Oth's pursuit of the free drug program simply demonstrates she was exploring an alternative method of obtaining the Tysabri treatment for Cavallo in the face of PHP's denial.

¶26        Because the record does not support a conclusion that Cavallo's purported cancellation of the February 2016 prior-authorization request was a "voluntary and intentional relinquishment of a known right," *Koerber*, 82 Ariz. at 356, the waiver jury instruction was improper and constituted reversible error.   *See Sparks*, 132 Ariz. at 539 ("It is reversible error to instruct the jury on a legal theory which is not supported by the evidence.").   The waiver instruction prejudiced Cavallo "since the court thereby invite[d] the jury to speculate as to possible non-existent circumstances."   *See Spur Feeding Co.*, 106 Ariz. at 148 ("We agree that it is reversible error to instruct upon a theory which is not supported by facts to be found in the record.").

**¶27**        The waiver instruction was reversible error in this case for an additional reason.   Here, neither party contends that the covenant of good faith and fair dealing can be waived.   PHP even points out that it has "never argued the duty of good faith could be waived."   And in fact, this Court has determined that parties may not "erase," "limit," or "eliminate" the covenant of good faith and fair dealing in an operating agreement.   *See In re Sky Harbor Hotel Props., LLC*, 246 Ariz. 531, 532 ¶ 2, 534 ¶¶ 12–14 (2019). In reaching that decision, we specifically cited *Rawlings*' holding that a "covenant of good faith and fair dealing is implied in every contract . . . . The covenant . . . may be breached even though the express covenants of the contract are fully performed."   *Id.* ¶ 12 (citing *Rawlings*, 151 Ariz. at 163). Our conclusion in *In re Sky Harbor Hotel Props.*, 246 Ariz. at 534, that the covenant of good faith and fair dealing may not be waived applies equally in the context of an insurance bad faith claim, which was at issue in *Rawlings*, 151 Ariz. at 161.

**¶28**        Here, the waiver jury instruction, *supra* ¶ 11, in combination with PHP's closing argument that the cancellation "reliev[ed] [PHP] from any duty to perform on that initial authorization," *supra* ¶ 21, was misleading and prejudicial to Cavallo because it reasonably could have caused a jury to incorrectly conclude Cavallo could waive the covenant of good faith and fair dealing in the context of a tort claim for insurance bad faith.   *See In re Sky Harbor Hotel Props.*, 246 Ariz. at 532, 534.   This constitutes reversible error.   *See Kwik-Teck, Inc. v. Esper*, 107 Ariz. 508, 510 (1971) ("[U]nder the circumstances in the present case, we find that the trial court committed reversible error by giving the punitive damage instruction advanced by [plaintiffs'] counsel since the language used tended to obscure the proper standard to be applied by the jury."); *Noland v. Wootan*, 102 Ariz. 192, 194 (1967) ("If an instruction is misleading to the jury and prejudices the appellant's rights, then the giving of that instruction constitutes reversible error," and "the trial court committed reversible error by giving the instruction complained of here since the language used tended to obscure the proper standard to be applied.").

**¶29**        We reach this conclusion based on the record before us.   To be clear, however, we are not barring a waiver jury instruction in *all* bad faith cases.   Depending on the case, a waiver jury instruction could be relevant to explain the defendant's conduct and whether the defendant acted reasonably under the circumstances.   But, in such cases, the trial court should carefully evaluate whether a waiver instruction is supported by

10

evidence in the record and relevant to explain the defendant's conduct, and whether it would otherwise confuse or mislead the jury. *See Ariz. Pub. Serv. Co. v. Brittain*, 107 Ariz. 278, 282 (1971) (concluding the trial court properly refused a proposed instruction because it would "only heighten the confusion of the jury in an already sufficiently confused area").

¶30 The trial court should also consider that Arizona's bad faith jury instruction already requires a plaintiff to prove the defendant "intentionally [denied the claim] [failed to pay the claim] [delayed payment of the claim] *without a reasonable basis for such action*." *See* Rev. Ariz. Jury Instr. (Civ.) Bad Faith 1 (First-Party), at 2 (7th ed. 2021) (emphasis added). By instructing the jury to determine whether there was "a reasonable basis for [the defendant's] action," the jury can already consider the plaintiff's entire course of conduct up to the alleged breach, including whether the defendant's action was a reasonable response to the plaintiff's conduct. The trial court, therefore, should carefully consider whether the RAJI instruction is the best option to avoid possible juror confusion under the circumstances.

## B. Jury Instruction on Mitigation of Bad Faith Damages

¶31 Because we reverse and remand for a new trial, we need not determine whether the specific mitigation of damages instruction given was error. Nonetheless, because the issue was "briefed, argued, and thoroughly explored," we provide guidance on a proper mitigation of damages instruction on remand. *Schwab v. Matley*, 164 Ariz. 421, 422 n.2 (1990).

¶32 Here, PHP presented evidence and argued at trial that Cavallo could have prevented most of his damages by paying a $150 administration fee for a free dose of Tysabri from Biogen. The record supports the theory that, by the time Cavallo rejected the Biogen offer, PHP had already implemented its alleged improper policy and told Oth that Tysabri was out of network and Cavallo did not have out-of-network benefits (events that form the basis of Cavallo's bad faith claim). Thus, PHP had already engaged in alleged bad faith conduct when Cavallo rejected the dose of Tysabri.

¶33        Based on the record, the basis for a proper jury instruction is set forth in Restatement § 918(1):

> [O]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.

*See Fulton v. Woodford*, 17 Ariz. App 490, 494 (1972) ("The doctrine of avoidable consequences precludes a plaintiff from recovering damages for losses he could have avoided by reasonable conduct on his part."); *S.A. Gerrard Co. v. Fricker*, 42 Ariz. 503, 508 (1933) (describing a "duty upon the person injured to exercise reasonable care to mitigate the injury, according to the opportunities that may fairly be or appear to be within his reach" (quoting 17 C.J. 844, § 166)); *see also Coury Bros. Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 518 (1968) (explaining that "[t]he obligation to avoid the consequences of known injuries was recognized" in *S.A. Gerrard Co.*). Restatement § 918(1) provides the basis for a proper jury instruction where, as here, a party has allegedly failed to use "reasonable effort or expenditure after the commission of the tort" to avoid harm.   *See* Restatement § 918 cmt. a (explaining that "recovery for the harm is denied because it is in part the result of the injured person's lack of care").

¶34        Cavallo has expressed concern about injecting comparative fault principles into a mitigation of damages instruction.   Restatement § 918(1) provides that a plaintiff "injured by the tort of another" may not "recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort."   This language properly focuses on whether part of the plaintiff's injury could have been reasonably avoided by the plaintiff.   *See* Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies* § 8.5(1) (3d ed. 2018) (discussing the "avoidable consequences rule" and that, for example, the "part of plaintiff's injury that occurs because he unreasonably refused medical attention is causally apportioned to plaintiff, as if he were the only relevant cause of that injury"). Restatement § 918(1) does not discuss the plaintiff's fault with respect to the conduct that constitutes the alleged bad faith.   *See id.* (explaining that "comparative fault rules attempt to apportion liability by assessing the respective *fault* of the relevant actors" and the "comparative fault system

need only identify the separate *conduct* of the parties"). [3] Therefore, Restatement § 918(1) will provide the appropriate guidance to the jury in this case.

**¶35** We note that subsection (1) of Restatement § 918 contains an exception set forth in subsection (2). Restatement § 918(2) states,

> One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.

Therefore, if there is evidence in the record supporting the exception in Restatement § 918(2) for this bad faith action, the trial court should instruct the jury on both subsections (1) and (2) of § 918.

**¶36** On the issue of Restatement § 918(2), it is also worth noting that, to be liable for tort damages in an insurance bad faith case, it must be established that the insurer "intended its act or omission, lacking a founded belief that such conduct was permitted by the policy," but "the insurer need not intend to harm the insured." *Rawlings*, 151 Ariz. at 160–61 ("Although the tort of bad faith is founded upon the defendant's intentional conduct, the intent need not be an intent to injure, harm or oppress."). Therefore, not all bad faith cases will involve an insurer that "intended the harm" to the insured under Restatement § 918(2).

**¶37** Finally, we observe that during closing arguments, PHP told the jury that if it found Cavallo "did not act reasonably to prevent or mitigate his damages, *you're going to have to rule with the defendant* or, at least, reduce the damages accordingly." (Emphasis added). The italicized portion of

---

[3] Cavallo argues the duty to mitigate should not require him to jeopardize his right to coverage under the Plan by failing to obtain prior authorization before accepting the free Tysabri dose from Biogen. If true, Cavallo may be able to present these arguments to the jury. *See* Restatement § 918(1) (discussing "harm that [plaintiff] could have avoided by the use of reasonable effort or expenditure").

PHP's statement was improper. If the jury concludes PHP engaged in bad faith, but also concludes Cavallo failed to avoid harm "by the use of reasonable effort or expenditure after the commission of the tort," this may result in a reduction in damages. *See* Restatement § 918(1). But the jury does not "have to rule with the defendant." *See id.* at cmt. a ("[T]he rule stated in this Section applies only to the diminution of damages and not to the existence of a cause of action."); *see also Fulton*, 17 Ariz. at 494 (stating the doctrine of avoidable consequences precludes recovery of those "damages for losses [that plaintiff] could have avoided by reasonable conduct").

### C. Attorney Fees

**¶38** Cavallo requested attorney fees but failed to specify a basis for the award as required by Arizona Rule of Civil Appellate Procedure 21(a)(2) ("A claim for fees under this Rule must specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees. If a party fails to comply with this requirement, the appellate court may decline to award fees on that basis."). We deny Cavallo's request for attorney fees.

**¶39** PHP also requested attorney fees under Rule 21 and A.R.S. § 12-341.01. We decline PHP's request for attorney fees because it was not the successful party in this action.

### III.  CONCLUSION

**¶40** We vacate ¶¶ 11–23 of the court of appeals' opinion. We reverse the judgment of the trial court and remand for a new trial consistent with this opinion.